ROBERT R. MOORE (BAR NO. 113818)
MICHAEL J. BETZ (BAR NO. 196228)
NICHOLAS A. SUBIAS (BAR NO. 228789)
ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA  94111-4074
Phone:  (415) 837-1515
Fax:  (415) 837-1516
E-Mail:   rmoore@allenmatkins.com
          mbetz@allenmatkins.com
          nsubias@allenmatkins.com

Attorneys for Plaintiff/Counter-Defendant
JEAN PHLEGER, an individual

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JEAN PHLEGER, an individual,<br><br>              Plaintiff,<br><br>        vs.<br><br>COUNTRYWIDE HOME LOANS, Inc.;<br>COUNTRYWIDE BANK, N.A.; AMERICA'S<br>WHOLESALE LENDER; RECONTRUST<br>COMPANY, N.A; FIRST NATIONAL<br>MORTGAGE SOURCES, LLC; GEORGE W.<br>HANNAH II; and DOES 1 through 10,<br>inclusive,<br><br>              Defendants.<br><br>————————————————————<br><br>AND RELATED CROSS, COUNTER AND<br>THIRD-PARTY CLAIMS. | Case No. C-07-1686 SBA (WDB)<br><br>**PLAINTIFF/COUNTER-DEFENDANT JEAN PHLEGER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**<br><br>Ctrm:   3, 3rd Floor<br>Judge:   Hon. Saundra B. Armstrong<br><br>Complaint Filed:        August 16, 2006<br>Date Case Removed:   March 23, 2007 |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

726451.01/SF

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

## TABLE OF AUTHORITIES

**Page(s)**

I.      Introduction ................................................................................................... 1

II.     Factual Background .......................................................................................... 5

     A.    Jean Phleger And Her Green Street Home ............................................. 5

     B.    Michael Edison, George Hannah and First National Illegally
         Obtained Loan Proceeds From Countrywide Secured By
         Mrs. Phleger's Green Street Home ........................................................ 5

     C.    Loan Applications Were Fraudulent And Credit Reports Warned Of
         Fraud .................................................................................................... 5

     D.    Jean Phleger Did Not Sign The Loan Documents .................................. 6

     E.    Stewart Title Also States The Documents Were Signed On
         September 16, 2005, In Nevada, Where Jean Phleger Was Not
         Present .................................................................................................. 7

     F.    Countrywide's Verified Discovery Responses State Jean Phleger
         Signed Loan Documents On September 18, 2005, At The Fairmont
         Hotel In San Francisco, which is contrary to the Notary and Closing
         Agent's Testimony ................................................................................ 7

     G.    The Countrywide Mortgage and Line Of Credit At Issue Have Been
         Cancelled And Rescinded as a Matter of Law ....................................... 8

III.    Procedural History ........................................................................................... 9

IV.     Argument ......................................................................................................... 11

     A.    Legal Standard For Issuance Of Temporary Restraining Order ............. 11

     B.    Jean Phleger Unquestionably meets the Standard for a Temporary
         Restraining Order .................................................................................. 12

         1.    Countrywide's Foreclosure Sale Will Irreparably Harm
             Mrs. Phleger, And She Demonstrates a Probability of
             Success On The Merits; Thus, An Order Temporarily
             Restraining Countrywide's Foreclosures Sale Must Issue ......... 12

             a)    The Foreclosure Sale Of Mrs. Phleger's Home Will
                 Cause Irreparable Harm ................................................. 12

         2.    Jean Phleger Is Likely To Succeed On The Merits In All Of
             Her Causes Of Action Against Countrywide ........................... 13

             a)    Jean Phleger's Cause Of Action For Cancellation Will
                 Succeed On The Merits ................................................... 13

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

726451.01/SF
-

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

(i)

**Page(s)**

    b) Jean Phleger's Cause Of Action For A Violation Of
      TILA Will Succeed On The Merits ................................................ 14

    c) Jean Phleger's Non-TILA Causes Of Action For
      Rescission Will Succeed On The Merits ..................................... 15

   3. There Are Serious Questions And The Balance Of Hardships
     Tip Sharply In Favor Of Mrs. Phleger ........................................ 16

 C. The Foreclosure Sale Must Be Temporarily Restrained Because
   Countrywide's Notices Of Sale Are Defective ..................................... 17

 D. No Bond Or Only A Nominal Bond Should Be Required Because
   There Is No Likelihood Of Harm To Defendant ................................. 17

V. Conclusion ................................................................................................ 18

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

726451.01/SF

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

(ii)

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

1 WITKIN:  SUMMARY OF CALIFORNIA LAW, CONTRACTS, § 813
    (10th ed. 2005) ......................................................................................16

*Bronco Wine Co. v. U.S. Dept. of Treasury,*
    997 F.Supp. 1309 (E.D. Cal. 1996) ................................................11

*Cronkhite v. Kemp,*
    741 F.Supp. 822 (E.D. Wash. 1989)............................................2, 12

*Crummer v. Whitehead,*
    230 Cal.App.3d 264 (1964)............................................................17

*Daniels v. Williams,*
    125 Cal.App.2d 310 (1954)............................................................12

*Jorgensen v. Cassiday,*
    320 F.3d 906 (9th Cir. 2003)......................................................4, 17

*MAI Sys. Corp. v. Peak Computer, Inc.,*
    991 F.2d 511 (9th Cir. 1993)......................................................2, 11

*Republic of the Philippines v. Marcos,*
    862 F.2d 1355 (9th Cir. 1988)....................................................2, 11

*Rosenthal v. Great Western Fin. Sec. Corp.,*
    14 Cal.4th 394 (1996)....................................................................13

*Saint Agnes Med. Ctr. v. Pacificare of Cal.,*
    31 Cal.4th 1187 (2003)..................................................................13

*Semar v. Platte Valley Fed. Sav. & Loan Ass'n,*
    791 F.2d 699 (9th Cir. 1986)................................................3, 14, 15

*Stockton v. Newman,*
    148 Cal.App.2d 558 (1957)............................................................12

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,*
    240 F.3d 832 (9th Cir. 2001)................................................2, 11, 16

*Textile Unlimited, Inc. v. ABMH and Co., Inc.,*
    240 F.3d 781 (9th Cir. 2001)..........................................................11

*Wheat v. Thomas,*
    209 Cal. 306 (1930)..................................................................2, 11, 12

*Wrobel v. S.L. Pope & Assocs.,*
    2007 WL 2345036 (S.D. Cal. 2007)..........................................2, 12

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

726451.01/SF

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

(iii)

**Page(s)**

**Statutes**

12 C.F.R. § 226 .................................................................................................8, 14

12 C.F.R. § 226.23(b)(5) ........................................................................................14

12 C.F.R. §§ 226.15(a)(3) .........................................................................................9

12 C.F.R. §§ 226.23(a)(3) .........................................................................................9

15 U.S.C. § 1601 ...............................................................................................8, 14

15 U.S.C. § 1635(a) ................................................................................................14

15 U.S.C. § 1635(b) ................................................................................................15

CAL. CIV. CODE §§ 2924 .........................................................................................17

CAL. CIV. CODE § 1565 ...........................................................................................15

CAL. CIV. CODE § 1689 ...........................................................................................15

CAL. CODE CIV. PROC. § 3387 .........................................................................2, 11, 12

CAL. GOV. CODE § 27287 ......................................................................................9, 14

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

726451.01/SF

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

(iv)

# I. INTRODUCTION

**On November 26, 2007, the day after Thanksgiving**, defendants COUNTRYWIDE HOME LOANS, Inc., COUNTRYWIDE BANK, N.A., AMERICA'S WHOLESALE LENDER; and RECONTRUST COMPANY, N.A. (collectively, "Countrywide"), seeks to foreclose and sell the San Francisco family home of an elderly widow, plaintiff Jean Phleger.  The parties are in the middle of court-ordered settlement discussions and the threatened non-judicial foreclosure is clearly intended to intimidate and put undue pressure on Mrs. Phleger to settle/abandon her claims against Countrywide.  In addition, Countywide seeks to punish Mrs. Phleger because Countrywide is not faring well in discovery and the evidence elicited demonstrates Mrs. Phleger never signed the Countrywide loans.  As such, and for the reasons set forth in detail herein, a temporary restraining order ("TRO") is respectfully requested to prevent the forced sale of Mrs. Phleger's home on **November 26, 2007**.

This case arises out of an egregious financial fraud perpetrated against Mrs. Phleger, an elderly widow who is well known in the community for her charitable work and philanthropy, who lives with her daughter in her San Francisco family home located at 2728 Green Street.  One of the primary actors in the fraud was Michael Edison ("Edison"), a cross-defendant in this action. Edison's criminal scheme involved using Mrs. Phleger's name and home to fraudulently obtain millions of dollars in loan proceeds.  To carry out his scheme, Edison turned to defendants First National Mortgage Sources, LLC ("First National"), a loan broker, and George Hannah, II ("Hannah"), a First National employee, to prepare falsified applications for a loan and a separate line of credit from Countrywide.  Edison, First National and Hannah submitted the falsified applications to Countrywide for loans totaling $4,500,000, in Jean Phleger's name and secured by her Green Street Home.  By September 2005, Countrywide approved a line of credit and loan for a total of $3,850,000, both in Mrs. Phleger's name and both purportedly secured by her Green Street Home.  Mrs. Phleger never knew about these transactions nor did she sign any of the loan documents.  Despite the fact that Mrs. Phleger knew nothing of these fraudulent transactions and never signed the loan documents, defendant Countrywide shamelessly seeks to proceed with a foreclosure sale on Plaintiff's home **on November 26, 2007**, tactically timed so that Mrs. Phleger

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

726451.01/SF

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

-1-

1    will have no access to the courts on the four days preceding the foreclosure sale due to the

2    Thanksgiving holiday.  A temporary restraining order must issue to prevent the foreclosure sale

3    from proceeding.

4         Under Ninth Circuit law, a temporary restraining order is intended to preserve the *status*

5    *quo* pending a full hearing on a preliminary injunction and will issue where the moving party

6    establishes *either* (1) a combination of probable success on the merits and the possibility of

7    irreparable injury, *or* (2) that serious questions are raised and the balance of hardships tips sharply

8    in favor of the moving party.  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832,

9    839-40 (9th Cir. 2001).  "These are not two distinct tests, but rather the opposite ends of a single

10   continuum in which the required showing of harm varies inversely with the required showing of

11   meritoriousness."  *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)

12   (citations omitted).  Notably, the required showing of irreparable harm decreases as the probability

13   of success on the merits increases.  *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 516 (9th

14   Cir. 1993).  Further, both under California law and federal court precedent, **a foreclosure sale of**

15   **one's residence constitutes "irreparable harm" as a matter of law, thus justifying a TRO**.

16   *Wheat v. Thomas*, 209 Cal. 306 (1930); CAL. CODE CIV. PROC. § 3387; *Wrobel v. S.L. Pope &*

17   *Assocs.,* 2007 WL 2345036 (S.D. Cal. 2007) ("Losing one's home through foreclosure is an

18   irreparable injury"), *citing Cronkhite v. Kemp*, 741 F.Supp. 822, 825 (E.D. Wash. 1989).

19   Obviously, Mrs. Phleger meets these standards for the issuance of a temporary restraining order

20   because the forced sale of her family home will cause irreparable harm, she can show probable

21   success on the merits of her claims and Mrs. Phleger's case raises serious questions and the

22   balance of hardship tips sharply in her favor.

23        The foreclosure sale on Mrs. Phleger's home, if allowed to proceed, will result in

24   Mrs. Phleger losing her family home where she has lived for decades and raised her children; her

25   family home is unique and cannot be replaced.  In addition, the sale price ($3,836,177.67) sought

26   by Countrywide in the foreclosure sale is just enough to recover the amount on the fraudulently

27   obtained loans; it is far less than the actual value of Mrs. Phleger's home, which Countrywide

28   knows was appraised at $5,500,000.  Therefore, if the foreclosure sale is allowed to go forward,

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

726451.01/SF

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

-2-

1  Mrs. Phleger will lose at least $1,663,823 in appreciation and equity, which cannot be replaced,

2  when she prevails on her claims in this action.  The November 26, 2007, foreclosure sale will

3  unquestionably cause irreparable harm to Mrs. Phleger and must be enjoined.

4    The November 26, 2007, foreclosure sale must also be enjoined because the evidence

5  elicited so far demonstrates Mrs. Phleger will succeed on the merits.  It is hornbook law that if a

6  party did not know it was signing a contract, or it did not enter a contract at all, the contract is void

7  for lack of mutual assent.  Here, Mrs. Phleger never signed the Countrywide loan documents at

8  any time or authorized Edison to do so.  The loan documents were prepared and executed as part

9  of defendants financial fraud scheme for which Edison is now being held in Federal prison.

10  Indeed, the documents Countrywide relies upon in seeking to foreclose and sell Mrs. Phleger's

11  home state they were signed in either Nevada or San Francisco on September 16, 2005, but

12  Mrs. Phleger was neither in San Francisco nor in Nevada on the dates those documents were

13  signed, as is verified by airline, telephone, credit card purchase records, Mrs. Phleger's testimony

14  and defendants themselves.  Countrywide bases its foreclosure on loan documents which are void.

15  Indeed, Countrywide's deeds of trust, upon which it bases its foreclosure sale of Mrs. Phleger's

16  home, are invalid.

17    In addition, Mrs. Phleger has a substantial probability of success on the merits of her

18  claims brought under The Truth In Lending Act ("TILA"), 15 U.S.C. 1601, *et seq*.  The

19  Countrywide mortgage loan and line of credit at issue in this case were required to comply with

20  TILA, which provides that the Notice of Right to Cancel **must** accurately state the last date upon

21  which the borrower may rescind the loan agreement without penalty.  *Semar v. Platte Valley Fed.*

22  *Sav. & Loan Ass'n*, 791 F.2d 699, 701 (9th Cir. 1986).  Where a lender fails to provide the

23  borrower with a three-business-day period to rescind or cancel, the borrower may rescind the loan

24  within three years after it was consummated.  Here, Mrs. Phleger was not provided with an

25  adequate Notice of Right to Cancel and therefore had three years from September 18, 2005, (the

26  date Countrywide alleges loan documents were signed), to rescind the mortgage and line of credit.

27  Mrs. Phleger did so on March 8, 2007, which is within the three-year period.  Upon Mrs. Phleger's

28  March 8, 2007, rescission of the Countrywide mortgage and line of credit, the security interest

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

726451.01/SF

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

-3-

1  (here, the deeds of trust) held by Countrywide are automatically void.  Therefore, the deeds of

2  trust that form the basis of Countrywide's foreclosure and notice of sale are void and

3  unenforceable.  For these reasons, Mrs. Phleger clearly demonstrates probable success on the

4  merits, which in conjunction with her showing of severe irreparable injury, requires the issuance

5  of a temporary restraining order preventing Countrywide's foreclosure sale on November 26,

6  2007.

7      The November 26, 2007, foreclosure sale must also be enjoined because Mrs. Phleger

8  meets the alternative test for the issuance of a temporary restraining order—this case raises serious

9  issues concerning the validity of the Countrywide loans and the balancing of the hardships in this

10 case tips sharply in Mrs. Phleger's favor.  As stated above, there are serious issues to be resolved

11 as to the validity of the loan documents, including the validity of the Countrywide deeds of trust,

12 which form the basis for Countrywide's forced sale of Mrs. Phleger's home on November 26,

13 2007.  Furthermore, given the irreparable harm faced by the prospect of Mrs. Phleger losing her

14 family home and all of her equity, which cannot be recovered, the balance of hardships tips

15 sharply in her favor.  For these reasons, as well, a temporary restraining order must issue to

16 prevent the foreclosure sale on Mrs. Phleger's home from taking place on **November 26, 2007**.

17     Additionally, the foreclosure sale cannot be allowed to go forward because the notices of

18 the foreclosure sale are defective in that they are not signed, fail to specify the book and page

19 number of the property, were not personally served on Donald Klein, a trustee for the property,

20 and reflect an inaccurate amount owed.

21     Finally, no bond—or at most a nominal one—should be required for the issuance of the

22 temporary restraining order because there can be no showing that some harm is more likely absent

23 the posting of a security bond.  *See Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

24     The Court is therefore respectfully requested to issue an order temporarily restraining

25 Countrywide and/or its agents (including ReconTrust) from proceeding with the foreclosure sale

26 on November 26, 2007.

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

726451.01/SF

-4-

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

## II.  FACTUAL BACKGROUND

**A.   JEAN PHLEGER AND HER GREEN STREET HOME**

For more than 20 years, Jean Phleger, the 69-year old widow of Atherton Phleger, and her family have lived at 2728 Green Street (Green Street Home), in San Francisco.  Declaration of Jean Phleger ("Phleger Decl."), submitted herewith, ¶ 2.   Mrs. Phleger and her late husband purchased the Green Street Home in 1981, they raised their children there, and Mrs. Phleger continues to reside at the home.  *Id*.  The home is filled with memories and experiences stretching back over two decades, and its loss would be irreplaceable.  *Id*.  Countrywide now asserts that it will sell Mrs. Phleger's Green Street Home on the day after Thanksgiving to gain perceived tactical advantage in the middle of court-supervised settlement discussions.

**B.   MICHAEL EDISON, GEORGE HANNAH AND FIRST NATIONAL ILLEGALLY OBTAINED LOAN PROCEEDS FROM COUNTRYWIDE SECURED BY MRS. PHLEGER'S GREEN STREET HOME**

In early 2005, Mrs. Phleger met and interviewed Cross-Defendant Michael Edison ("Edison").  Phleger Decl., ¶ 3.  Mr. Edison stated he could assist Mrs. Phleger to increase a line of credit she held with Wells Fargo Bank and assist her with bill paying her bills.  *Id*.

Using Mrs. Phleger's name and Green Street Home, however, Edison then obtained a mortgage and a line of credit, totaling nearly four million dollars, from defendant Countrywide.  *Id*. at ¶ 4.  He then fled with millions of dollars in proceeds from the Countrywide mortgage and line of credit.  *Id*.  As a result of those actions, the United States charged Edison with three counts of wire fraud; he currently awaits trial.  *See* Ex. 1 to Request for Judicial Notice ("RJN") filed herewith.  The United States also charged Edison's wife with obstruction of justice for forging documents to aid his defense.  *See* Ex. 2 to RJN.

**C.   LOAN APPLICATIONS WERE FRAUDULENT AND CREDIT REPORTS WARNED OF FRAUD**

Defendants First National Mortgage Sources, LLC ("First National") and George W. Hannah, II ("Hannah") generated fraudulent loan applications used by Edison to obtain the Countrywide mortgage and line of credit.  Defendant Hannah states he completed the applications based upon an interview with the borrower, allegedly Mrs. Phleger.  *See* Ex. A to the Declaration

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

726451.01/SF

-5-

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

of Michael J. Betz ("Betz Decl.,") filed herewith.  Mrs. Phleger, however, never met nor spoke with Hannah, ever.  Phleger Decl., ¶ 5.

Moreover, inaccuracies and inconsistencies plague the applications.  Mrs. Phleger's date of birth is wrong, and the date of construction of her Green Street Home is wrong.  Phleger Decl., ¶ 6; Ex. A to Betz Decl.  The applications provide a Nevada phone listing as Mrs. Phleger's telephone number and a Nevada address as her mailing address.  Ex. A to Betz Decl.  The applications list Mrs. Phleger's income as $95,000 per month, state she was self-employed, and identify her employer as "Retired."  *Id*.  The loan applications purport to be completed "Jointly," meaning there was a "Co-borrower," yet they list no Co-borrower.  *Id*.

The Landsafe Credit Merge Report in Jean Phleger's name, dated July 6, 2005, and received by Countrywide, also contains numerous warnings which demonstrate the applications were fraudulently prepared as follows:  (1) the address listed was non-residential and high risk, (2) the social security number listed was used repeatedly in recent months as had the address; (3) numerous inquiries were made within the last 60 days; (4) too many inquiries were made in the last 12 months; (5) too many accounts were recently opened; (6) the time since opening of the most recent accounts was too short; and (7) too many accounts with balances existed.  Ex. B to Betz Decl.

**D.    JEAN PHLEGER DID NOT SIGN THE LOAN DOCUMENTS**

Janie Hilario testified she notarized the deeds of trust upon which Countrywide relies in foreclosing upon Mrs. Phleger's Green Street Home.  Ex. C to Betz Decl., Oct. 19, 2006, Deposition of J. Hilario ("Hilario Dep."), p. 118:4-16.  Mrs. Hilario stated those documents were signed on September 16, 2005, in San Francisco, California.  *Id*. at pp. 28:20-23; 88:25—89:5. Janie Hilario further testified:  (1) on September 16, 2005, she was licensed to perform notary services in Nevada, not California (*Id*. at p. 27:1-3); (2) she witnessed a person Edison claimed was Mrs. Phleger sign the deeds of trust at issue on September 16, 2005, (See, e.g., *id*. at pp. 116:17—117:4); (3) that person said at most one word, "yes" in the Ms. Hilario's presence on September 16, 2005 (*Id*. at p. 176:6-16); (4) that person was very tall, not 5 foot 9 inches, but was

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

726451.01/SF

-6-

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

1   much taller (*Id*. at pp. 59:21—60:9); (5) that person's hair was "very gray" (*Id*. at p. 59:12-16);

2   (6) that person was not thin or petite but seemed big boned (*Id*. at pp. 61:23—62:2).

3       Undisputed evidence, however, demonstrates that Mrs. Phleger was not in San Francisco

4   on September 16, 2005.   Plane tickets, telephone records, and credit card purchases establish

5   Mrs. Phleger was in Los Angeles that entire day.  *See* Ex. A to Phleger Decl.   Furthermore, the

6   evidence establishes that Mrs. Phleger is 5 foot, 9 inches tall and does not have gray hair.   Phleger

7   Decl., ¶ 7; Ex. 3 to RJN.   At that time, her hair was brown with blond highlights.  *Id*.  Mrs. Phleger

8   is not big boned.   To the contrary, Mrs. Phleger currently weighs 135 lbs. and weighed

9   approximately the same amount in September 2005.   According to the Centers for Disease Control

10  and Prevention, that places her body mass index only slightly above underweight and in the lower

11  end of normal—certainly not big boned.   Ex. 4 to RJN.

12  **E.    STEWART TITLE ALSO STATES THE DOCUMENTS WERE SIGNED ON SEPTEMBER 16,**

13  **2005, IN NEVADA, WHERE JEAN PHLEGER WAS NOT PRESENT**

14      In September of 2005, Quynh Khong worked as an escrow assistant at Stewart Title of

15  California, Inc., the escrow holder for the Countrywide mortgage and line of credit at issue in this

16  action.   Ms. Khong handled a substantial portion of Stewart Title's work concerning contact with

17  First National, Hannah, Countrywide, and Edison as well as the closing and funding of the

18  mortgage and line of credit.   She testified the documents were signed in Nevada on September 16,

19  2005; however, Jean Phleger was not in Nevada on September 16.   Ex. D to Betz Decl., Khong

20  Dep., p. 74:14-18.

21  **F.    COUNTRYWIDE'S VERIFIED DISCOVERY RESPONSES STATE JEAN PHLEGER SIGNED**

22  **LOAN DOCUMENTS ON SEPTEMBER 18, 2005, AT THE FAIRMONT HOTEL IN SAN**
    **FRANCISCO, WHICH IS CONTRARY TO THE NOTARY AND CLOSING AGENT'S TESTIMONY**

23      Although the notary and escrow officer for this transaction testified the loan documents

24  were signed on September 16, 2005, (Ex. C to Betz Decl., Hilario Dep., pp. 88:25—89:5.),

25  Countrywide claims it knows better.   In its verified responses to plaintiff's interrogatories,

26  Countrywide states on September 18, 2005, plaintiff signed loan documents, including the "deeds

27  of trust, the notes and the notices of right to cancel."   Ex. E to Betz Decl., Countrywide's

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

726451.01/SF

-7-

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

1   Responses, pp. 36:20-23; 37:16-19.   Interestingly, Countrywide cites, as the basis for its

2   conclusion, testimony of Janie Hilario.

3       Countrywide's verified responses further state Mrs. Phleger signed those documents on

4   September 18, 2005, at the Fairmont Hotel in San Francisco.   Ex. E to Betz Decl., Countrywide's

5   Responses, pp. 36:23-25; 37:19-21.   Again, this contradicts the testimony of Janie Hilario's

6   testimony.  Ms. Hilario testified, while she does not recall its name, the hotel where the documents

7   were allegedly notarized by her and signed Mrs. Phleger on September 16, 2005, was in San

8   Francisco, "by Fisherman's Wharf." Ex. C to Betz Decl., Hilario Dep., pp. 48:21-24; 49:2-4.  The

9   Fairmont Hotel, however, is not by Fisherman's Wharf.  Ex. 5 to RJN.  Ms. Hilario further testified

10  the hotel where the documents were signed was near the water.   As she explained, at one point she

11  set out to walk down to the water, but when she was halfway there Edison's wife "came running

12  and said, never mind, never mind, don't go, we're ready for docs."  Ex. C to Betz Decl., Hilario

13  Dep., p. 56:8-11.)   This belies Countrywide's contention the documents were signed at the

14  Fairmont, which is located atop Nob Hill, not at Fisherman's Wharf or near the water.

15      Mrs. Phleger was neither in San Francisco nor at the Fairmont Hotel on September 18,

16  2005.   On September 18, 2005, Mrs. Phleger spent the entire day in Woodside, California.

17  Phleger Decl., ¶ 8; Declaration of Don Klein.  On that date, she did not visit San Francisco, spend

18  any time at the Fairmont Hotel, or sign any loan documents.  Nor did she meet with Ms. Hilario or

19  Edison on September 18, 2005.

20  **G.    THE COUNTRYWIDE MORTGAGE AND LINE OF CREDIT AT ISSUE HAVE BEEN
            CANCELLED AND RESCINDED AS A MATTER OF LAW**

21

22      As this is a consumer loan by creditor Countrywide, which is secured by Mrs. Phleger's

23  home and primary residence, the transactions are governed by the Truth In Lending Act (TILA).

24  *See* 15 U.S.C. § 1601 et seq. and Reg. Z, § 226 et seq.  Mrs. Phleger, however, did not receive an

25  adequate Notice of Right to Cancel, which is required by TILA.  *See* Ex. F to Betz Decl.  The

26  Notice of Right to Cancel, which has been produced in this action contains an inadequate period

27  for cancellation.  Specifically, Countrywide's verified discovery responses contend the Notice was

28  signed on September 18, 2005, a Sunday.   Under TILA, the right to cancel must extend for a

LAW OFFICES
**Ullen Matkins Leck Gamble
Mallory & Natsis LLP**

726451.01/SF

-8-

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

1   period of three business days.  *See* Reg. Z, 12 C.F.R. §§ 226.15(a)(3) and 226.23(a)(3).  Three

2   business days from September 18 is September 21—not September 20.  The actual Notice

3   purportedly provided to Mrs. Phleger, however, requires cancellation no later than September 20,

4   2005, a Tuesday, which renders the Deed of Trust voidable.  *See* Ex. F to Betz Decl.

5        On March 8, 2007, Jean Phleger filed her Second Amended Complaint in this action.  At

6   paragraph 84 of that Complaint Jean Phleger gave notice to Countrywide that Mrs. Phleger had,

7   pursuant to TILA, cancelled and rescinded the mortgage loan and line of credit at issue in this

8   case.  Ex. G to Betz Decl.  In contravention of TILA's requirements, defendant Countrywide has

9   now scheduled a trustee sale of Mrs. Phleger's home for the Monday following the Thanksgiving

10  weekend.  Ex. H to Betz Decl.  Countrywide did so even though it is aware, and has been since

11  March 8, 2007, that Mrs. Phleger cancelled and rescinded the loan and line of credit at issue, thus

12  rendering void and unenforceable the deeds of trust Countrywide relies upon in its notice of sale.

13  Countywide is also aware that, because Ms. Hilario was not authorized to notarize documents in

14  California, the deeds Countrywide relies upon to foreclose should never have been recorded.  *See*

15  CAL. GOV. CODE § 27287.

16               **III.**    **PROCEDURAL HISTORY**

17       On February 14, 2006, Jean Phleger filed a Complaint in San Francisco Superior Court,

18  captioned *Phleger v. Edison, et al*., Case No. CGC-06-449433, against defendants Edison and his

19  Company Private Wealth Management Group for Conversion, Embezzlement, Theft, Intentional

20  Misrepresentation, Negligent Misrepresentation, Elder Abuse, Violation of Bus. & Prof. Code

21  Sec. 17200, Declaratory Relief, and Temporary Restraining Order/ Preliminary Injunction.  Ex. I

22  to Betz Decl.  A preliminary injunction was issued as was a default was entered.  Betz Decl., ¶ 10.

23       After obtaining discovery from third-parties in *Phleger v. Edison, et al*., on August 16,

24  2006, plaintiff Jean Phleger filed suit against Countrywide, First National, and George Hannah.

25  That action, captioned *Phleger v. Countrywide Home Loans, Inc., et al*., was filed in the San

26  Francisco Superior Court, but subsequently removed by Countrywide to this Court.  The causes of

27  action in the operative complaint, plaintiff's Second Amended Complaint, include (a) Cancellation

28  of Contract; (b) Rescission of Contract based upon Mistake, Capacity, and Consideration;

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

726451.01/SF

-9-

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

(c) Violation of the Truth in Lending Act; (d) Conspiracy to Defraud; (e) Breach of Fiduciary Duty; (f) Elder Abuse; (g) Unjust Enrichment; (h) Declaratory Relief; and (i) Injunctive Relief.[1] *See* Ex. G to Betz Decl.

On March 30, 2007, defendants First National and George Hannah filed a Third-Party Complaint against Michael Edison based upon a single cause of action—Equitable Indemnity. On June 18, 2007, defendant Countrywide filed its Counter- and Cross-Complaint. Ex. J Betz Decl. In that Counter- and Cross-Complaint, Countrywide asserts claims against Mrs. Phleger for (a) **Judicial Foreclosure**, (b) Money Owed on Notes, (c) Breach of Contract, (d) Unjust Enrichment, (e) Equitable Subrogation, (f) and Declaratory Relief. With Edison brought into the Case on First National's and Hannah's Third-Party Complaint for Indemnification, Countrywide's Counter- and Cross-Complaint also included a cross-claim against Edison for Equitable Indemnification. *Id*.

On July 26, 2007, plaintiff Jean Phleger filed her Third-Party Complaint Against Stewart Title. Through her Third-Party Complaint, Mrs. Phleger asserts causes of action against Stewart Title is for Negligence, Breach of Fiduciary Duty, and Indemnity.

On October 5, 2007, the parties to the action participated in a three hour settlement conference with United States Magistrate Judge Nandor J. Vadas. Ex. K to Betz Decl. The case did not settle, but the parties agreed to a second settlement which took place on October 18, 2007, again with Magistrate Judge Vadas. *Id*. That settlement conference lasted five hours, and while the parties did not settle, the agreed to, in good faith, participate in a third settlement conference before Magistrate Judge Vadas, which is set for November 30, 2007. *Id*.

Less than a month before the date set for the third settlement conference, by letter dated November 1, 2007, Countrywide's counsel wrote to plaintiff. Ex. L to Betz Decl. Countrywide's letter first stated: "we understand the frustration that Ms. Phleger must feel…." Such understanding was short-lived. *Id*. Without providing a specific date or even a general timeframe,

---

[1] Plaintiff's Second Amended Complaint previously contained a cause of action for negligence against Countrywide. On June 4, 2007, however, this court dismissed that cause of action. The preliminary injunction cause of action seeks to enjoin Defendants from foreclosing on Jean Phleger's home.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

726451.01/SF

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

-10-

1  Countrywide went on to state we intend to cause to be recorded a notice of sale with respect to

2  Mrs. Phleger's Green Street Home.  *Id.*  The reason provided by Countrywide:  "At this point, it

3  has no other option."  *Id.*  This, of course, is belied by Countrywide's earlier actions detailed

4  above, including the fact it has sought judicial foreclosure in this case.  On November 6, 2007,

5  Countrywide purportedly sent Jean Phleger its notice of intent to sell her home the first business

6  day after Thanksgiving in an obvious attempt to intimidate her before the next settlement

7  conference.  Ex. H to Betz Decl.  Given the manner of service, the notice of sale was not received

8  until the following Monday—November 12, 2007.  Jean Phleger promptly moved for a TRO.

9  ## IV.   ARGUMENT

10  **A.   LEGAL STANDARD FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER**

11  Issuance of a Temporary Restraining Order is intended to preserve the *status quo* pending

12  a full hearing on a preliminary injunction.  *See Bronco Wine Co. v. U.S. Dept. of Treasury*, 997

13  F.Supp. 1309, 1313 (E.D. Cal. 1996).  Under Ninth Circuit precedent, a preliminary injunction is,

14  in turn, "a device for preserving the status quo and preventing the irreparable loss of right before

15  judgment." *See Textile Unlimited, Inc. v. ABMH and Co., Inc.*, 240 F.3d 781, 786 (9th Cir. 2001).

16  A party seeking a preliminary injunction must establish "either (1) a combination of probable

17  success on the merits and the possibility of irreparable injury, or (2) that serious questions are

18  raised and the balance of hardships tips sharply in favor of the moving party." *Stuhlbarg Int'l*

19  *Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839-40 (9th Cir. 2001).  "These are not two

20  distinct tests, but rather the opposite ends of a single continuum in which the required showing of

21  harm varies inversely with the required showing of meritoriousness." *Republic of the*

22  *Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (citations omitted).  The required

23  showing of irreparable harm decreases as the probability of success on the merits increases. *See*

24  *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 516 (9th Cir. 1993).

25  Under California law, irreparable harm is conclusive where the property subject to a

26  pending sale is unique. *See Wheat v. Thomas*, 209 Cal. 306 (1930); CAL. CODE CIV. PROC.

27  § 3387.  As a matter of law, single-family residences are presumed to be unique.  CAL. CODE CIV.

28  PROC. § 3387.  Similarly, other Federal district courts have stated that the loss of one's residence

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

726451.01/SF

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

-11-

1 constitutes irreparable harm. *Wrobel v. S.L. Pope & Assocs.,* 2007 WL 2345036 (S.D. Cal. 2007)

2 ("Losing one's home through foreclosure is an irreparable injury") *citing Cronkhite v. Kemp*, 741

3 F.Supp. 822, 825 (E.D. Wash. 1989.) Furthermore, California courts have long held that that

4 allegations of fraud in the original loan transaction will support a preliminary injunction of a

5 foreclosure sale. *See Daniels v. Williams*, 125 Cal.App.2d 310 (1954); *Stockton v. Newman*, 148

6 Cal.App.2d 558 (1957). Given this judicial framework, Jean Phleger is entitled to a TRO and

7 preliminary injunction as she faces irreparable harm, will succeed on the merits and there are

8 serious questions raised by Countrywide's looming foreclosure.

9 **B.     JEAN PHLEGER UNQUESTIONABLY MEETS THE STANDARD FOR A TEMPORARY
        RESTRAINING ORDER**

10

11      **1.     Countrywide's Foreclosure Sale Will Irreparably Harm Mrs. Phleger, And
                She Demonstrates a Probability of Success On The Merits; Thus, An Order
                Temporarily Restraining Countrywide's Foreclosures Sale Must Issue**

12

13              **a)     The Foreclosure Sale Of Mrs. Phleger's Home Will Cause Irreparable
                        Harm**

14      Countrywide's November 26, 2007, foreclosure sale of Mrs. Phleger's family home will

15 cause irreparable harm and thus an order temporarily restraining Countrywide and/or its agents

16 from proceeding with the foreclosure sale should issue. For purposes of issuing a temporary

17 restraining order, California law holds—as does federal precedent —that a foreclosure sale on a

18 person's home is conclusively irreparable harm. *See Wheat v. Thomas, supra,* 209 Cal. 306; CAL.

19 CODE CIV. PROC. § 3387; *Wrobel v. S.L. Pope & Assocs.,* 2007 WL 2345036; *Cronkhite v. Kemp,*

20 741 F.Supp. at 825. Thus, Mrs. Phleger meets the standard of irreparable harm for issuance of a

21 temporary restraining order as matter of law.

22      Mrs. Phleger is an elderly widow, well-respected for her community activities and

23 philanthropy. Mrs. Phleger has lived in her San Francisco home for decades and raised her

24 children at the home. If allowed to proceed, the foreclosure sale will result in Mrs. Phleger losing

25 her family home. Her family home is unique and cannot be replaced once it is sold.

26      In addition, the sale price ($3,836,177.67) in the foreclosure sale is just enough to recover

27 the amount on the loans that were fraudulently obtained by defendant Edison. The sale price is

28 drastically less than the actual value of Mrs. Phleger's home, which Countrywide knows was

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

726451.01/SF

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

-12-

appraised at $5,500,00.  Ex. M to Betz Decl.  Therefore, if the foreclosure sale is allowed to go forward,  Mrs. Phleger will effectively be robbed of  at least $1,663,823 in appreciation and equity which she has built up in her home over her decades of ownership.  If her home is sold by Countrywide, Mrs. Phleger will not be able to recover her equity, even when she prevails on her claims in this action, thereby subjecting here to millions of dollars in unrecoverable losses. Therefore, Mrs. Phleger imminently faces severe and irreparable harm.  The foreclosure sale must be enjoined.

### 2.   Jean Phleger Is Likely To Succeed On The Merits In All Of Her Causes Of Action Against Countrywide

#### a)   Jean Phleger's Cause Of Action For Cancellation Will Succeed On The Merits

If a party did not know it was signing a contract, or it did not enter a contract at all, the contract is void for lack of mutual assent.  *Saint Agnes Med. Ctr. v. Pacificare of Cal*., 31 Cal.4th 1187, 1200 (2003).  Where "fraud goes to the inception or execution of the agreement, so that the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all, mutual assent is lacking, and [the contract] is *void*." *Rosenthal v. Great Western Fin. Sec. Corp.*, 14 Cal.4th 394, 415 (1996) (emphasis original). Here, Mrs. Phleger was neither in San Francisco nor in Nevada on the dates documents Countrywide relies upon in seeking to foreclose and sell Mrs. Phleger's home were signed.  Janie Hilario, testified that, although not licensed to do so in California, she notarized, and Mrs. Phleger signed, the documents in San Francisco on September 16, 2005, in the lobby of a hotel at Fisherman's Wharf and near the water which in and of itself makes the deed of trust upon which Countywide seeks to foreclose should never have been registered.

Countrywide's verified interrogatory responses, on the other hand, state that Mrs. Phleger signed the documents in San Francisco on September 18, 2005, at the Fairmont Hotel, which is neither at Fisherman's Wharf nor near the water.  Mrs. Phleger, however, was in Los Angeles on September 16, 2005, not San Francisco or Nevada.  Furthermore, on September 18, 2005, she was in Woodside, California the entire day and did not venture into San Francisco, let alone to the Fairmont Hotel.  Moreover, Mrs. Phleger never knowingly signed documents seeking a mortgage

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

726451.01/SF

-13-

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

1    loan or a line of credit from Countrywide on September 16, 18, or on any other date.  Thus, there

2    could be no mutual assent, as she never intended to obtain anything from Countrywide.

3          In addition, the deed of trust upon which Countrywide predicates its foreclosure is invalid

4    as a matter of law as it was allegedly signed in California by a notary who admittedly is not

5    licensed to practice in California.  The deed, therefore, could not have been legally acknowledged

6    and recorded.  *See* CAL. GOV. CODE § 27287.  Mrs. Phleger, therefore, is likely to succeed on her

7    claim for cancellation because she either did not sign the loans in question, at all, or, if she did, she

8    was deceived as to the nature of what she signed and the deed is legally unenforceable.

9          **b)     Jean Phleger's Cause Of Action For A Violation Of TILA Will Succeed
                On The Merits**

10

11         The Countrywide mortgage loan and line of credit at issue in this case were required to

12   comply with TILA.  15 U.S.C. § 1601 et seq. and Reg. Z, § 226 et seq.  Under TILA, borrowers

13   are allowed three business days to rescind or cancel loans.  *Semar v. Platte Valley Fed. Sav. &*

14   *Loan Assoc.*, 791 F.2d 699, 701 (9th Cir. 1986), citing 15 U.S.C. § 1635(a) and 12 C.F.R.

15   § 226.23(b)(5).  Moreover,  where a lender fails to provide the borrower with a three business-day-

16   period to rescind or cancel a loan, the borrower may rescind the loan within three years after it was

17   consummated.  *See Semar*, 791 F.2d at 701-702.

18         In *Semar*, the lender's Notice of Right to Cancel omitted the specific date upon which the

19   three day period expired, although it did contain the date on which the period began to run

20   (July 16), and stated the rescission right expired three business days after July 16.  *Id.* at 702.  The

21   lender claimed this omission represented a mere technical violation, while the borrowers argued

22   the violation entitled them to rescind the loan for up to three years.  *Id.*  Upholding the district

23   court's order, the Court of Appeal held:

24              TILA and Reg. Z contain detailed disclosure requirements for
                consumer loans.  A lender's violation of TILA allows the borrower
25              to rescind a consumer loan secured by the borrowers' primary
                dwelling.  15 U.S.C. § 1635(a).  Technical or minor violations of
26              TILA or Reg. Z, as well as major violations, impose liability on the
                creditor and entitle the borrower to rescind.  'To insure that the
27              consumer is protected …[TILA and Reg. Z must] be absolutely
                complied with and strictly enforced.'

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

726451.01/SF

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

-14-

1  *Semar*, 791 F.2d at 703-704 (citations and footnote omitted).

2       Here, Countrywide contends Mrs. Phleger signed the loan documents on September 18,

3  2005; thus, the mandatory three business day rescission period began to run on September 18 and

4  should have ended on September 21.  Although that is what was required under TILA, that is not

5  what Countrywide provided.

6       Instead, the Notice of Right to Cancel, which Countrywide relies upon, provided a right to

7  rescind only until September 20—a two, rather than a three business day period.  Countrywide's

8  Notice of Right to Cancel, therefore, failed to provide for the required period under TILA.

9  Because it did not provide the required period, Mrs. Phleger (if she did sign the loan documents

10 pursuant to fraudulent representations) had three years from September 18, 2005 (the date

11 Countrywide alleges loan documents were signed), to rescind the mortgage and line of credit.

12 Mrs. Phleger rescinded the mortgage and line of credit on March 8, 2007, which was within the

13 three-year period.

14      Upon Mrs. Phleger's March 8, 2007, rescission of the Countrywide mortgage and line of

15 credit, the security interest (here, the deeds of trust) held by Countrywide are automatically void

16 and the consumer owes no finance or other charges.  15 U.S.C. § 1635(b).  Those are the very

17 same deeds of trust Countrywide now invokes in foreclosing upon Mrs. Phleger's home and

18 noticing the sale of that home.  Those deeds of trust are, however, void and unenforceable.

19          c)      **Jean Phleger's Non-TILA Causes Of Action For Rescission Will**
                    **Succeed On The Merits**

20

21      Jean Phleger asserts several causes of action for rescission which rely upon contract law,

22 not TILA.  Those causes of action include rescission based upon mistake and rescission based

23 upon want of consideration.  A contract requires that the consent of the parties be free, mutual, and

24 communicated by each to the other.  *See* CAL. CIV. CODE § 1565.  A party to a contract may

25 rescind the contract if his or her consent was given by mistake.  *See* CAL. CIV. CODE § 1689.

26 Furthermore, rescission is proper where there has been a material failure of consideration.  Failure

27 of considerations represents an "implied (constructive) condition, and the doctrine rests upon the

28 theory that it is unjust to compel one party to perform when, for any reason, that party does not

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

726451.01/SF

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

-15-

1   receive the other party's performance.  1 WITKIN:  SUMMARY OF CALIFORNIA LAW, CONTRACTS,

2   § 813 (10th ed. 2005).

3       At the time the Countrywide mortgage and line of credit were obtained, including through

4   September 18, 2007, Mrs. Phleger:  (1) did not seek a mortgage, and (2) did not seek or know of

5   any loans sought in her name from Countrywide.  Phleger Decl. ¶ 8.  Any Countrywide loans,

6   therefore, purportedly signed for or entered by Mrs. Phleger on or before September 18, 2005,

7   resulted from mistake and may be rescinded.  Moreover, most of the proceeds forming

8   consideration for the Countrywide mortgage and line of credit were not received by Mrs. Phleger,

9   but were instead paid to and received by Michael Edison.  Mrs. Phleger, therefore, did not receive

10  adequate consideration.

11      **3.    There Are Serious Questions And The Balance Of Hardships Tip Sharply In
            Favor Of Mrs. Phleger**

12

13      The November 26, 2007, foreclosure sale must also be enjoined because Mrs. Phleger

14  meets the alternative test for the issuance of a temporary restraining order in that this case raises

15  serious issues of the validity of the Countrywide loans and the balancing of the hardships in this

16  case weighs sharply in Mrs. Phleger's favor.  *See Stuhlbarg Int'l Sales Co.*, *supra*, 240 F.3d 832,

17  839-40.  As stated above in Section IV.B.2, there are serious issues to be resolved as to whether

18  Jean Phleger signed the loan documents based on fraudulent representations, and as to the validity

19  of the Countrywide deeds of trust, the same deeds Countrywide relies upon for the forced sale of

20  Mrs. Phleger's home on November 26, 2007.  If Mrs. Phleger prevails on any of those issues, the

21  loans and deeds of trust, which are Countrywide's security for the loans, will be void, rendering

22  any foreclosure sale invalid.  Indeed, Countrywide has pled foreclosure as a claim for relief in this

23  action, thereby seeking judicial resolution before this Court of its rights under the fraudulently

24  procured loans and the related deed of trust.  Countrywide should not be allowed to circumvent

25  judicial resolution of this matter by rushing a potentially invalid foreclosure sale on Mrs. Phleger's

26  home solely to force a settlement.

27      Further, as stated in Section IV.B.1, given the irreparable harm faced by the prospect of

28  Mrs. Phleger losing her family home and all of her equity, which cannot be recovered, the balance

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

726451.01/SF

-16-

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

1  of hardships tips sharply in her favor.  On the other hand:  (1) there is no hardship faced by

2  Countrywide because its has a pending action for foreclosure against Mrs. Phleger in this action;

3  (2) it holds deeds of trust as security; (3) a lis pendens has been recorded against the home; and

4  (4) there is no evidence the home will in any way be affected pending trial.  As there is no

5  hardship faced by Countrywide is awaiting judicial resolution of the foreclosure issue, a TRO

6  should issue.

7      Therefore, for these reasons, as well, a temporary restraining order must issue to prevent

8  the foreclosure sale on Mrs. Phleger's home from taking place on **November 26, 2007**.

9  **C.    THE FORECLOSURE SALE MUST BE TEMPORARILY RESTRAINED BECAUSE
   COUNTRYWIDE'S NOTICES OF SALE ARE DEFECTIVE**

10

11     California law provides that a foreclosure may be challenged on grounds that there are

12  defects in the notice of default or notice of sale.  *See Crummer v. Whitehead*, 230 Cal.App.3d 264

13  (1964); CAL CIV. CODE §§ 2924-2924.  In this instance, the foreclosure sale cannot be allowed to

14  go forward as a matter of law because the notices of the foreclosure sale are defective.  The

15  notices are not signed, fail to specify the book and page number of the property, and were not

16  personally served on Donald Klein, a trustee.  *See* Declaration of Donald Klein, filed herewith; Ex.

17  H to Betz Decl.  These procedural defects in the notices of sale require that Countrywide's

18  foreclosure sale of Mrs. Phleger's home be temporarily restrained.  In addition, the amount

19  Countrywide now claims is owed contradicts both the notice of default it initially served upon

20  Mrs. Phleger and notices subsequently sent to Jean Phleger.  *Compare* Ex. H and Ex. N Betz Decl.

21  Indeed, Countrywide seeks to take Jean Phleger's home when it cannot properly ascertain the

22  amount of the alleged default.  Such a stark violation of the notice requirements in itself requires

23  the enjoining of the November 26, 2007, foreclosure sale.

24  **D.    NO BOND OR ONLY A NOMINAL BOND SHOULD BE REQUIRED BECAUSE THERE IS NO
   LIKELIHOOD OF HARM TO DEFENDANT**

25

26     Although Federal Rules Of Civil Procedure, Rule 65(c), requires that a plaintiff granted a

27  temporary restraining order or preliminary injunction post a bond, there are exceptions to this rule,

28  in particular where there is no likelihood of harm to the defendant.  *Jorgensen v. Cassiday*, 320

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

726451.01/SF

-17-

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order

1    F.3d 906, 919 (9th Cir. 2003) (ruling that "[w]ithout a showing that some harm is more likely

2    absent the posting of a security bond, we cannot say that the district court clearly abused its

3    discretion by not ordering a bond").

4         Here, there is no likelihood of harm to Countrywide because it has a deeds of trust and a *lis*

5    *pendens* recorded on Mrs. Phleger's home; thus, Countrywide has sufficient security to ensure that

6    its interests will not be affected until this matter is resolved at trial.  As Countrywide's interests in

7    Mrs. Phleger's home are protected through the resolution of this action, a bond need not be

8    required for the issuance of an order restraining Countrywide from proceeding with its foreclosure

9    sale on Mrs. Phleger's home on November 26, 2007.

10                            **V.    CONCLUSION**

11        For any and all of the foregoing reasons, the Court is therefore respectfully requested to

12   issue an order temporarily restraining Countrywide and/or its agents (including Recon Trust) from

13   proceeding with the foreclosure sale on November 26, 2007.  Mrs. Phleger requests the Court

14   order a full briefing on the issuance of preliminary injunction which would bar the foreclosure

15   sale, if any, on Plaintiff's home until this action is resolved at trial.

16

17   Dated:  November 15, 2007                    ALLEN MATKINS LECK GAMBLE
                                                  MALLORY & NATSIS LLP
18

19                                        By:    /s/   Robert R. Moore
                                                _____
20                                                ROBERT R. MOORE
                                                  Attorneys for Plaintiff/Counter-Defendant
21                                                JEAN PHLEGER, an individual

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

726451.01/SF

-18-

Case No.  C-07-1686 SBA (WDB)
Application for Temporary Restraining Order