**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

JEAN PHLEGER,

      Plaintiff,

  v.

COUNTRYWIDE HOME LOANS, INC., *et al.*,

      Defendants.

No. C 07-1686 SBA

**TEMPORARY RESTRAINING ORDER**

Before the Court is plaintiff Jean Phleger's *ex parte* application for a temporary restraining order and order to show cause [Docket No. 144]. Phleger is seeking to enjoin defendants Countrywide Home Loans, Inc. (d/b/a America's Wholesale Lender), Countrywide Bank, N.A., and Reconstruct Company, N.A. from proceeding with a foreclosure sale scheduled for November 26, 2007, on her residence located at 2728 Green Street, San Francisco. For the reasons that follow, the Court GRANTS the *ex parte* application for a temporary restraining order and order to show cause. On the basis of the plaintiff's application and supporting documentation, the plaintiff has shown a probable success on the merits of her claim that the contract involving the loan from the defendants is invalid and that she will suffer irreparable injury if the Court does not grant the temporary restraining order.

**BACKGROUND**

In early 2005, Jean Phleger was introduced to Michael Edison, who stated that he could provide her financial services by obtaining an increased line of credit and paying off an existing line of credit. Edison allegedly conspired with First National Mortgage Sources, LLC, and its representative George W. Hannah II, to fraudulently obtain a loan from Countrywide on behalf of Phleger.

In September 2005, Countrywide approved two loans for Phleger in the amount of $3,850,000.00. This amount consisted of a mortgage for $3,300,000.00 and a line of credit for $550,000.00. The loans were secured by deeds of trust recorded against her residence in San Francisco (the Green Street home). The Green Street home was purchased by Phleger and her late husband in

1981. The loan proceeds were first used to pay off Phleger's $1.48 million dollar line of credit secured by the Green Street home. The remainder of the proceeds were wired to a joint Wells Fargo Bank account in the name of Phleger and Edison. Over the course of the next several months, Edison purportedly withdrew the funds from the joint account without the authorization of Phleger. Edison has since been indicted and arrested for wire fraud in connection with his alleged conversion of Phleger's loan proceeds. *See* 07-cr-0074 WHA, Docket Nos. 1-3.

The plaintiff maintains as follows:

> Mrs. Phleger never signed the Countrywide loan documents at any time or authorized Edison to do so. The loan documents were prepared and executed as part of defendants financial fraud scheme for which Edison is now being held in Federal prison. Indeed, the documents Countrywide relies upon in seeking to foreclose and sell Mrs. Phleger's home state they were signed in either Nevada or San Francisco on September 16, 2005, but Mrs. Phleger was neither in San Francisco nor in Nevada on the dates those documents were signed, as is verified by airline, telephone, credit card purchase records, Mrs. Phleger's testimony and defendants themselves. Countrywide bases its foreclosure on loan documents which are void. Indeed, Countrywide's deeds of trust, upon which it bases its foreclosure sale of Mrs. Phleger's home, are invalid.

Docket No. 145, at 3.

Phleger asserts that the loan proceeds were paid despite Countrywide's knowledge of numerous indicia of fraud. The warning signs of fraud included, among other things, a credit report that indicated the following: the loan was secured by high-risk property; Phleger had too many bank accounts recently opened; the ratio of balance to credit limits in Phleger's bank accounts were too high; there had been too many inquiries concerning Phleger's credit in the prior sixty days; Phleger's Social Security number had been used three times since April 2005 for loan inquiries; and Phleger had a high number of accounts with balances. *See* Docket No. 61, at 2. Moreover, the loan documents themselves contained inaccuracies such as Phleger's ethnicity, her birth-date, phone number, address, the year her home was built, her income, the value of the home, and her filing status. *See id.*

On February 14, 2006, Phleger filed a complaint in the San Francisco Superior Court. On August 16, 2006, Phleger filed a second amended complaint. On March 23, 2007, this action was removed from state court based on federal question jurisdiction. In her second amended complaint, Phleger asserts a cause of action for violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*

2

On March 30, 2007, defendants First National Mortgage Sources, LLC and George W. Hannah II filed a third-party complaint against Michael Edison for equitable indemnity. *See* Docket No. 10. On June 18, 2007, defendants Countrywide Home Loans, Inc. and Countrywide Bank, N.A. filed a counterclaim against plaintiff Phleger and a cross-complaint against Michael Edison. *See* Docket No. 80.

On October 5, 2007, the parties engaged in a settlement conference before Magistrate Judge Nandor J. Vadas. The parties participated in a second settlement conference on October 18, 2007. While the case did not settle at that time, the parties agreed to participate in a third settlement conference before Magistrate Judge Vadas on November 30, 2007.

On November 1, 2007, counsel for defendant Countrywide sent a letter to plaintiff. *See* Docket No. 147, Ex. L. It states, in part:

> [T]he principal purpose of this letter is to provide you with courtesy notice that Countrywide at this time intends to pursue its remedies under the respective loan agreements and will cause to be recorded a notice of sale with respect to the senior deed of trust secured by the subject real property. We will provide you with a copy of the notice of sale once we receive it.

*Id.*

On November 6, 2007, Countrywide sent a "Notice of Trustee's Sale" to Phleger. *See* Docket No. 147, Ex. H. This notice states that the residence at 2728 Green Street, San Francisco, will be sold at public auction on November 26, 2007. Phleger states that she did not receive the notice of sale until November 12, 2007. This application for a TRO was filed November 15, 2007.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 65 authorizes a court to enter a preliminary injunction or temporary restraining order. *See* FED. R. CIV. P. 65. The purpose of such injunctive relief is to preserve the relative positions of the parties until a trial on the merits can be conducted. *See E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 990 (9th Cir. 2006); *LGS Architects, Inc. v. Concordia Homes*, 434 F.3d 1150, 1158 (9th Cir. 2006). A party seeking a preliminary injunction must show either: (1) a combination of probable success on the merits and the possibility of irreparable injury, or

1  (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Faith Ctr.*
2  *Church Evangelistic Ministries v. Glover,* 462 F.3d 1194, 1201-02 (9th Cir. 2006). These two
3  formulations represent two points on a sliding scale in which the required degree of irreparable harm
4  increases as the probability of success decreases. *LGS Architects*, 434 F.3d at 1155; *see also Harper*
5  *v. Poway Unified Sch. Dist.*, 445 F.3d 1166, 1174 (9th Cir. 2006) (the greater the relative hardship to
6  the moving party, the less probability of success must be shown to support the grant of a preliminary
7  injunction). In addition, the party must do more than merely allege imminent harm sufficient to
8  establish standing, he or she must demonstrate immediate threatened injury as a prerequisite to
9  preliminary injunctive relief. *Associated Gen. Contractors v. Coalition for Economic Equity*, 950 F.2d
10 1401, 1410 (9th Cir. 1991), *cert. denied*, 503 U.S. 985 (1992).

11 Under the sliding scale theory, a party seeking an injunction "need not demonstrate that he will
12 succeed on the merits, but must at least show that his cause presents serious questions of law worthy of
13 litigation." *Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524, 1528 (9th Cir. 1993), *cert.*
14 *denied*, 511 U.S. 1030 (1994). Additionally, in cases where the public interest may be affected, the
15 court must consider the public interest as a factor in balancing the hardships. *Harris v. Bd. of*
16 *Supervisors*, 366 F.3d 754, 760 (9th Cir. 2004).

17 While a preliminary injunction will not be issued without security by the applicant under Federal
18 Rule of Civil Procedure 65(c), a district court has wide discretion in setting the amount of a bond, and
19 the bond amount may be zero if there is no evidence the party will suffer damages from the injunction.
20 *See Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003).

21
22                                                  **ANALYSIS**
23 The plaintiff's operative pleading is her Second Amended Complaint, filed on March 8, 2007.
24 *See* Docket No. 147, Ex. G. The plaintiff's complaint asserts claims for (1) Cancellation of Contract;
25 (2) Rescission of Contract Based upon Mistake, Capacity, and Consideration; (3) Violation of the Truth
26 in Lending Act; (4) Conspiracy to Defraud; (5) Breach of Fiduciary Duty; (6) Elder Abuse; and (7)
27 Unjust Enrichment. Phleger is seeking declaratory and injunctive relief.
28

**1.    Probability of Success on the Merits**

Plaintiff Phleger has demonstrated probable successes on the merits on her claims for relief of cancellation and rescission of contract and her Truth in Lending Act claim.

**a.    Cancellation and Rescission of Contract**

Phleger makes a strong showing that she did not sign the Countrywide loan agreement documents. In particular, Phleger has presented evidence demonstrating that she was not present when the loan documents were signed. Janie Hilario, testified that, although not licensed to do so in California, she notarized, and Phleger signed, the documents in San Francisco on September 16, 2005, in the lobby of a hotel at Fisherman's Wharf and near the water. Betz Dec. [Docket No. 147], Ex. C, Hilario Dep., pp. 48:21-24; 49:2-4. However, plane tickets to Los Angeles and a credit card record indicate that Phleger was in Los Angeles from September 15, 2005 to September 17, 2005. *See* Phleger Dec. [Docket No. 148], Ex. A. Alternatively, Countrywide's verified interrogatory responses state that Phleger signed the documents in San Francisco on September 18, 2005, at the Fairmont Hotel. Betz Dec., Ex. E, Countrywide's Responses, pp. 36:23-25; 37:19-21. Phleger, however, presented evidence that she was in Woodside, California on September 18, 2005 and declares that she did not venture into San Francisco on that day. Phleger Dec., ¶ 8; Klein Dec. [Docket No. 149].

If a party is unaware it is executing a contract, or it did not sign the contract at all, the contract is void for lack of mutual assent. *Saint Agnes Med. Ctr. v. Pacificare of Cal.*, 31 Cal.4th 1187, 1200 (2003); *see also* CAL. CIV. CODE § 1565 (the consent of the parties to a contract must be free, mutual, and communicated by each to the other). As such, plaintiff Phleger has made a showing of probable success on the merits for her claim that the Countrywide loan documents upon which it bases its foreclosure are void, and thus Countrywide's deed of trust, upon which it bases its foreclosure sale of Phleger's home, is also invalid.

**b.    Truth in Lending Act**

In addition, Phleger shows a probable success on the merits of her claims brought under the

5

1 Truth In Lending Act (TILA). "The TILA was enacted by Congress to 'avoid the uninformed use of
2 credit.'" *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989). To effectuate this purpose, "[e]ven
3 technical or minor violations of the TILA impose liability on the creditor." *Id.* (citing *Semar v. Platte*
4 *Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 704 (9th Cir. 1986)). Thus, the Ninth Circuit has held
5 that the TILA and accompanying regulations must be "absolutely complied with and strictly enforced."
6 *Id.*

7 Applicable here, section 125(a) of the TILA, 15 U.S.C. § 1635(a), provides that, in any consumer
8 credit transaction in which a security interest in a consumer's principal dwelling is retained, the
9 consumer "shall have the right to rescind the transaction until midnight of the third business day
10 following the consummation of the transaction or the delivery of the information and rescission forms
11 required under this section together with a statement containing the material disclosures required under
12 this subchapter, whichever is later." Regulation Z of the Federal Reserve Board provides that notice
13 of the right to rescind "shall clearly and conspicuously disclose . . . [t]he date the rescission period
14 expires." 12 C.F.R. § 226.23(b)(5). "If the required notice or material disclosures are not delivered,
15 the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's
16 interest in the property, or upon sale of the property, whichever occurs first." 12 C.F.R. § 226.23(a)(3).
17

18 Assuming that Phleger did sign the contract, it appears that the Countrywide mortgage loan and
19 line of credit at issue in this case fall within the ambit of TILA, and the three-year rescission provision.
20 Phleger presents evidence that she was not provided with an adequate Notice of Right to Cancel.
21 Specifically, she points to Countrywide's contention that Phleger signed the loan documents on Sunday,
22 September 18, 2005. Betz Decl., Ex. E., Countrywide's Responses, pp. 36:20-23; 37:16-19. If such is
23 the case, the mandatory three business day rescission period began to run on September 18 and should
24 have ended on September 21. However, the expiration date stated in the Notice of Right to Cancel

6

provided a right to rescind only until September 20—a two, rather than a three business day period.[1] Betz Dec., Ex. F.

The likelihood of Phleger's success in rescinding the loans due to a TILA violation finds support in *Semar*. There, the notice omitted the specific date upon which the three day period expired, although it did contain the date on which the period began to run (July 16), and stated the rescission right expired three business days after July 16. *Semar*, 791 F.2d at 702. The lender claimed this omission represented a mere technical violation, while the borrowers argued the violation entitled them to rescind the loan for up to three years. *Id.* The Ninth Circuit upheld the district court's finding that the omission of the date of expiration of the right to rescind, though a technical violation, provided grounds for rescission under TILA. *Id.* at 704-705. Here, unlike *Semar*, the expiration date in the Notice of Right to Cancel was not omitted. However, Phleger may succeed in proving that it was incorrect and, in light of *Semar*, successfully argue that the error extended Phleger's right to rescind for three years under TILA. In her second amended complaint, Phleger has exercised the rescission rights granted by TILA within the three year limitation. *See* Docket No. 147, Ex. G (Am. Compl. ¶ 84). Accordingly, even if Phleger signed the contract, she has lawfully rescinded it, and the defendants may not rely upon its to foreclose on the property.

### c.   **Notice of Sale**

In addition to showing a probability of success on the above causes of action, at least for purposes of this TRO application, Phleger has also identified defects with the notices of foreclosure sale. The plaintiff points out that the notices are not signed, fail to specify the book and page number of the

---

[1] Other evidence presented by Phleger indicates that the loan documents were signed on Friday, September 16, 2005. If this date is correct, Phleger may not succeed in asserting a TILA violation because, insofar as the expiration date is relevant, the right to rescind extends only to "midnight of the third business day following the consummation of the transaction." 15 U.S.C. § 1635(a). In California, Saturdays are considered "business days." CAL. CIV. CODE §§ 7, 9. Thus, if the documents were signed on Friday, September 16, 2005, an expiration date of Tuesday, September 20, 2005 is within TILA's requirements. Because the Court finds that Phleger has shown a probability of success on her contract claims, this issue may be reserved for further briefing by the parties on the motion for a preliminary injunction.

7

1 property, and were not personally served on Donald Klein, a trustee. These are requirements set out by
2 California Civil Code section 2924b. Given that the notice of sale is defective, the foreclosure may not
3 proceed as planned even if the contract and TILA issues were not present.

### 2. Irreparable Harm

Phleger maintains she will be irreparably harmed by the sale of her family home. She also asserts she will be irreparably harmed because the sale price sought by defendant Countrywide in foreclosure is $3,836,177.67, while her home has been appraised as worth $5,500,000. Therefore, if foreclosure proceeds, plaintiff Phleger will lose $1,663,823 in appreciation and equity.

In *Wrobel v. S.L. Pope & Associates*, 2007 WL 2345036, at *1 (S.D. Cal. 2007), the court found that "[l]osing one's home through foreclosure is an irreparable injury." Similar findings were made by the courts in *Johnson v. U.S. Department of Agriculture*, 734 F.2d 774, 789 (11th Cir. 1984) ("irreparable injury is suffered when one is wrongfully ejected from his home. Real property and especially a home is unique") and *Cronkhite v. Kemp*, 714 F. Supp. 822, 825 (E.D. Wash. 1989).

One court denied a temporary restraining order on a foreclosure, reasoning that the TRO applicant could halt foreclosure by paying the amount due on the loan. *See Barrett v. Popular Inc.*, 2007 WL 1753539, at *1 (W.D. Wash. 2007). But in this case, the validity of the loan itself is the heart of the dispute. The Court is therefore persuaded that Phleger will be irreparably harmed by the foreclosure of her home.

### 3. Bond

While the literal language of Federal Rule of Civil Procedure 65(c) suggests that a restraining order will not be issued without security by the applicant, a district court has wide discretion in setting the amount of a bond. *See Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Joregensen v. Cassidy*, 320 F.3d 906, 919 (9th Cir. 2003). Here there is no realistic harm to the defendants from a

temporary restraint of the foreclosure proceedings. If the defendants' position that the loans were valid is correct, then the loans are secured by the very property in question. Moreover, the defendants have filed a counterclaim against Phleger, with judicial foreclosure as one of their causes of action. It is not at all apparent why the defendants have decided to pursue non-judicial foreclosure at this juncture before proceeding with their counterclaim for judicial foreclosure. Should the non-judicial foreclosure be temporary halted, the defendants are still free to continue litigating their claim for relief of judicial foreclosure. The defendants interests are adequately secured by both the deed on the property if it is valid, and their pending counterclaim that seeks to establish the validity of that deed. No bond will be required at this time.

## CONCLUSION

Accordingly, it is ORDERED that plaintiff Jean Phleger's *ex parte* application for a temporary restraining order and order to show cause [Docket No. 144] is GRANTED. The defendants are enjoined from proceeding with the foreclosure and sale of the residence located at 2728 Green Street in San Francisco, California until the preliminary injunction hearing.

It is further ORDERED that a hearing for preliminary injunction is set for December 18, 2007,[2] at 2 P.M. The plaintiff is directed to file an opening brief in support of a preliminary injunction no later than November 21, 2007. The defendants' opposition is due no later than December 11, 2007.

IT IS SO ORDERED.

November 16, 2007

_____
Saundra Brown Armstrong
United States District Judge

---

[2] The Court notes that because the TRO application was noticed, the ten day limitation of Federal Rule of Civil Procedure 65(b) does not apply. In any event, the December 18, 2007, hearing date was requested by the defendants should the TRO be granted.

9