**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

JEAN PHLEGER,

    Plaintiff,

v.

COUNTRYWIDE HOME LOANS, INC., *et al.*,

    Defendants.

No. C 07-1686 SBA

**ORDER**

[Docket No. 92]

Before the Court is defendants First National Mortgage Sources, LLC (First National) and George W. Hannah II's motion to dismiss plaintiff Jean Phleger's counterclaims without leave to amend [Docket No. 92]. A hearing was held on this motion December 18, 2007. For the reasons that follow, the motion is GRANTED in PART.

## BACKGROUND

### 1. Factual Allegations

Plaintiff Jean Phleger owns a house located at 2728 Green Street in San Francisco. In early 2005, Phleger was introduced to Michael Edison, who was interviewed for the limited service of paying bills. Edison purportedly stated that he could provide Phleger financial services by obtaining an increased line of credit and paying off an existing line of credit from Wells Fargo. Edison allegedly conspired with First National, and its representative Hannah, to fraudulently obtain a loan from Countrywide[1] on behalf of Phleger, using Phleger's name and her Green Street property to secure the loans. First National is the mortgage broker that placed Phleger's loan application with Countrywide. First National and Hannah allegedly prepared falsified applications to obtain the loan and a separate line of credit.

In September 2005, Countrywide approved two loans for Phleger in the amount of

---

[1] Unless otherwise indicated, "Countrywide" refers collectively to Countrywide Home Loans, Inc., Countrywide Bank, N.A., and Reconstruct Company, N.A.

$3,850,000.00. This amount consisted of a mortgage for $3,300,000.00 and a line of credit for $550,000.00. The loans were secured by deeds of trust recorded against her residence in San Francisco (the Green Street home). The loan proceeds were first used to pay off Phleger's $1.48 million dollar line of credit. The remainder of the proceeds were wired to a joint Wells Fargo account in the name of Phleger and Edison. Over the course of the next several months, Edison purportedly withdrew the funds from the account without authorization from Phleger. Edison has since been indicted and arrested for wire fraud in connection with his alleged conversion of Phleger's loan proceeds. *See* Cr 07-0074 WHA, Docket Nos. 1-3.

Phleger maintains that the loan documents are fraudulent. For instance, the loan documents purport to be signed by Phleger on September 16, 2005 in San Francisco, and to be notarized by Janie Hilario. Phleger contends that she was in Los Angeles on September 16th, and that the notary was at the time only licensed in Nevada, not California.

**2.     Procedural History**

On February 14, 2006, Phleger filed a complaint against Edison and his company, Private Wealth Management, in San Francisco Superior Court. Edison defaulted on this complaint.

On August 16, 2006, Phleger filed suit against Countrywide, First National, and Hannah, also in San Francisco Superior Court. Phleger contends that First National and Hannah must indemnify her for any amount she may be found to owe Countrywide.

On March 8, 2007, Phleger filed a second amended complaint, which included a federal Truth in Lending Act claim against Countrywide. This action was thereafter removed to this Court based on this federal claim. *See* Docket No. 1.

On March 30, 2007, First National and Hannah filed a third-party complaint against Edison for equitable indemnity. *See* Docket No. 10. On June 18, 2007, Countrywide filed a counter-complaint and cross-complaint against Phleger for (1) judicial foreclosure; (2) money owed on notes; (3) breach of contract; (4) unjust enrichment; (5) equitable subrogation; and (6) declaratory relief. Countrywide asserts that Phleger owes it approximately $3.85 million for home loans. *See* Docket No. 80.

Countrywide maintains that Phleger has made no payments for the past year and a half. Countrywide's counter and cross-complaint also includes a cross-claim against Edison for equitable indemnification.

On July 26, 2007, Phleger filed a third-party complaint against Stewart Title of California, Inc, alleging negligence, breach of fiduciary duty, and indemnity. *See* Docket No. 87. Phleger also filed "counter and cross-claims" against First National and Hannah on July 26th. *See* Docket No. 86, at ¶¶ 104-113. Phleger is claiming the right to indemnification in the event she is found liable to Countrywide. It is these counterclaims that are the basis of the present motion.

## **ANALYSIS**

First National and Hannah posit that because neither "has asserted any claim against Ms. Phleger . . . [she therefore] cannot file 'counterclaims against First National or Mr. Hannah because neither is an 'opposing party' within the meaning of Federal Rule of Civil Procedure 13." Docket No. 92, at 2. On March 30, 2007, First National and Hannah filed its second amended answer to Phleger's complaint. *See* Docket No. 9. While it raises several affirmative defenses, it makes no claims for relief against the plaintiff.

### **1. Rule 13**

Federal Rule of Civil Procedure 13(a), addressing compulsory counterclaims, provides that a pleading "shall state as a counterclaim any claim which . . . the pleader has against any opposing party." Similarly, Rule 13(b), addressing permissive counterclaims, provides that a pleading "may state as a counterclaim any claim against an opposing party . . . ."

Both parties focus on who is properly considered an "opposing party" under Rule 13 and address cases construing that term. Phleger contends that "since August 2006 [First National and Hannah] have been defendants in claims asserted by Mrs. Phleger so counterclaims are permitted against them." Docket No. 100, at 1.

The focus on the meaning of the term "opposing parties" is somewhat misplaced. There is little doubt that First National and Hannah are "opposing parties" to plaintiff Phleger. The more central

3

problem with Phleger's "counterclaims" is that First National and Hannah have no claims against Phleger. A "counterclaim" presupposes the existence of a "claim." In *Kauffman v. Kebert*, 16 F.R.D. 225, 227 (W.D. Pa. 1955), the court noted that "A counterclaim presupposes a previous demand for relief against which the counterclaimant is defending or has a defense, or at least against whom a claim has been asserted . . . ." And "counterclaim" is defined by BLACK'S LAW DICTIONARY (8th ed. 2004) as "A claim for relief asserted against an opposing party after an original claim has been made; esp., a defendant's claim in opposition to or as a setoff against the plaintiff's claim." First National and Hannah have made no claim or demand for relief against Phleger. Accordingly, her new claims for indemnity against First National and Hannah are simply not "counterclaims." This is true regardless of whether First National and Hannah are "opposing parties."

What Phleger is attempting to do is assert additional claims against First National and Hannah. After an answer is filed, the method for adding additional claims is to seek leave to amend the complaint. *See* FED. R. CIV. P. 15(a). Simply designating new and additional claims "counterclaims" is not appropriate where no claims have been filed by the other party. First National and Hannah's motion to dismiss the "counterclaims" is therefore appropriate.

**2.     Meet and Confer**

Phleger contends the motion should be denied for the defendants' failure to comply with this Court's standing order number five requiring "all parties . . . to meet and confer before filing any motion before this court." Phleger avers that her counsel received a telephone call from defense counsel Kevin Calia on Friday afternoon, August 17, 2007. Calia informed her of the defendants' intent to file a motion to dismiss the counterclaims, and stated the basis of the motion to dismiss after being asked. Plaintiff's counsel stated that she would review the issues raised and respond early the following week. Later that afternoon, plaintiff's counsel followed up with this e-mail:

> I spoke with Michael Betz concerning your telephone call this afternoon. As I understand it, you telephoned to, for the first time, meet and confer on the issue Mrs. Phleger's counterclaims against First National and George Hannah. You raise some interesting issues which we will review during the early portion of next week. Once we have done so, we will be in a better position to discuss and confer with you on the

4

matters you set forth today.

Docket No. 101, Ex. D (Betz Decl.).

On Monday, August 20, 2007, at 11:58 A.M., Calia sent the following e-mail:

> I have received your email following my meet and confer last week with Michael Betz regarding First National's and Mr. Hannah's motion to dismiss the "counterclaims" plaintiff has attempted to assert against them. As you know, First National and Mr. Hannah are required to respond to your client's "counterclaims" today. Thus, they will be filing their motion to dismiss. However, if after you review our papers you conclude, as we believe you must, that our motion is well founded, and that you will voluntarily dismiss Ms. Phleger's "counterclaims" with prejudice, thereby sparing all parties further expense and sparing the Court the expenditure of time to review and rule upon the motion, we would welcome your stipulation to that effect.

Docket No. 101, Ex. E (Betz Decl.).

The motion to dismiss was filed less than an hour later. *See* Docket No. 92.

Under Local Civil Rule 1-5(n), "meet and confer" is defined as follows:

> "Meet and confer" or "confer" means to communicate directly and discuss in good faith the issue(s) required under the particular Rule or order. Unless these Local Rules otherwise provide or a Judge otherwise orders, such communication may take place by telephone. The mere sending of a written, electronic, or voice-mail communication, however, does not satisfy a requirement to "meet and confer" or to "confer." Rather, this requirement can be satisfied only through direct dialogue and discussion – either in a face to face meeting or in a telephone conversation.

While the exact parameters of what satisfies the "meet and confer" requirement are not laid out by the local rules, at a minimum, it requires a telephone call with "direct dialogue and discussion." Furthermore, this discussion should be made in "good faith."[2] Here there was a telephone call made the Friday before a Monday submission of the motion. It appears, even by the plaintiff's account, that there

---

[2] Other courts have similar minimum requirements to fulfill the "meet and confer" obligation prior to filing a motion. *See, e.g., Kyte v. Progressive Northwestern Ins. Co.*, 2004 WL 491886, at *2 (D. Alaska 2004) ("confer" implies communication and some degree of negotiation between the parties rather than simple demands); *Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 636 (D. Colo. 2003) (local rule to confer required at least a person-to-person telephone call to compare views and an attempt to reach an agreement without court involvement); *Tyson v. King*, 1999 WL 493394, at *2 (S.D.N.Y. 1999) ("'Confer' means to meet, in person or by telephone, and make a genuine effort to resolve the dispute by determining, without regard to technical interpretation of the language of a request, (a) what the requesting party is actually seeking, (b) what the discovering party is reasonably capable of producing that is responsive to the request, and (c) what specific genuine issues, if any, cannot be resolved without judicial intervention"); *Soto v. City of Concord*, 162 F.R.D. 603, 622-23 (N.D. Cal. 1995) (conference requires an attempt to have a live exchange of ideas and opinions).

1 was at least some discussion about the motion to dismiss. Thereafter, there were two follow-up e-mails. Thus, the plaintiff's objection appears to be that she was not given adequate time to consider the motion before it was actually filed.

It is relatively apparent that the filing of the "counterclaims" was done to bypass the requirements of Rule 15. In addition, the basis of the motion was clear—there are no claims by First National and Hannah, and therefore no basis for filing "counterclaims" against them. Thus, extensive discussion and consideration of the motion by the plaintiff was not required. Therefore, while the defendants' actions may not have been an ideal fulfillment of the "meet and confer" obligation, its was at least minimally sufficient under the circumstances.

**3.     Rule 13 "Cross-claim"**

Phleger next maintains that "[t]o the extent the Court finds Defendants are not 'opposing parties' for purposes of counterclaims, the motion [to dismiss] must still be denied. Under Rule 13, to the extent a party is not an 'opposing party,' it is a 'co-party,' against whom cross-claims are permitted." Docket No. 100, at 2, 12-13.

This argument is a non-starter. Phleger, First National, and Hannah are not co-parties. Phleger is a plaintiff who has filed claims against defendants First National and Hannah. First National and Hannah have filed an answer denying liability. Their status is that of opposing parties. And, "[c]learly, a cross-claim may not be asserted against a party on the opposite side of the action." *Johnson v. Heublein Inc.*, 227 F.3d 236, 243 (5th Cir. 2000) (citation omitted).

**4.     Rule 15 Leave to Amend**

In the final alternative to her other arguments, "Mrs. Phleger respectfully requests leave to amend her applicable complaint to include the causes of action alleged in the counterclaim." Docket No. 100, at 3. The defendants have two objections to this request: (1) it is not made by noticed motion, and (2) there is no attached complaint with the proposed amendments.

In most jurisdictions, a motion for leave to amend must be by motion and must be accompanied

by a copy of the proposed amended pleading. *See, e.g., Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) ("[f]iling a motion is the proper method to request leave to amend a complaint" and "[a] motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment"); *Ladd v. Plummer*, 1993 WL 29120, at *1 (E.D. Pa. 1993) (finding that a motion for leave to amend was incomplete for failure to attach a copy of the proposed complaint); *Jones v. Elrod*, 1988 WL 40929, at *1 (N.D. Ill. 1998) (denying leave to amend because no proposed amended complaint was submitted); *Williams v. Wilkerson*, 90 F.R.D. 168, 169-70 (E.D. Va. 1981) (adopting a *per se* rule that when a plaintiff seeks leave to amend his complaint, a copy of the proposed amended pleading must be attached to the motion).

The Ninth Circuit does not have a similar *per se* rule against informal motions for leave to amend. *See, e.g., Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 1445 n.2 (9th 1990); *Scott v. Eversole Mortuary*, 522 F.2d 1110, 1116, n.8 (9th Cir. 1975). Nevertheless, under Local Civil Rule 7-1(a), "[a]ny written request to the Court for an order must be presented by one of the following means," the relevant one in this case being by a "[d]uly noticed motion pursuant to Civil L.R. 7-2." Phleger has made a written request for leave to amend her complaint, but she has not submitted a duly noticed motion for such leave. Consequently, the request must be denied.

**CONCLUSION**

Accordingly, defendants First National Mortgage Sources, LLC and George W. Hannah II's motion to dismiss plaintiff Jean Phleger's counterclaims without leave to amend [Docket No. 92], is GRANTED in PART. The motion to dismiss is granted. If Phleger seeks leave to amend her complaint in the future, that motion will be determined accordingly to the standards of the Federal Rules. It would be premature to deny Phleger leave to amend her complaint before any such motion is filed.

IT IS SO ORDERED.

December 24, 2007

_Saundra B Armstrong_
Saundra Brown Armstrong
United States District Judge

7