**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

JEAN PHLEGER,

    Plaintiff,

v.

COUNTRYWIDE HOME LOANS, INC., *et al.*,

    Defendants.

No. C 07-1686 SBA

**ORDER**

[Docket No. 97]

Before the Court is defendant Stewart Title of California, Inc.'s (Stewart Title) motion to strike (or more accurately, dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)) plaintiff Jean Phleger's third-party complaint [Docket No. 97]. A hearing on this motion was held December 18, 2007. For the reasons that follow, the motion is DENIED, except to the limited extent, if any, that Phleger is alleging a violation of the Truth in Lending Act.

### BACKGROUND

**1. Factual Allegations**

Plaintiff Jean Phleger owns a house located at 2728 Green Street in San Francisco. In early 2005, Phleger was introduced to Michael Edison, who was interviewed for the limited service of paying bills. Edison "offered to assist [Phleger] procure an increased line of credit from Wells Fargo Bank, . . . and to supplement her income." Docket No. 87, at 1.

Instead of acting on Phleger's behalf, however, Edison allegedly conspired with First National Mortgage Sources, and its representative George Hannah, to fraudulently obtain a loan from Countrywide Home Loans, Inc.[1] on behalf of Phleger, using Phleger's name and her Green Street property to secure the loans.

In September 2005, Countrywide approved two loans for Phleger in the amount of

---

[1]     Unless otherwise indicated, "Countrywide" refers collectively to Countrywide Home Loans, Inc., Countrywide Bank, N.A., and Reconstruct Company, N.A.

$3,850,000.00. This amount consisted of a mortgage for $3,300,000.00 and a line of credit for $550,000.00. The loans were secured by deeds of trust recorded against her residence in San Francisco (the Green Street home). The loan proceeds were first used to pay off an existing $1.48 million dollar line of credit. The remainder of the proceeds were wired to a joint Wells Fargo account in the name of Phleger and Edison.

Phleger maintains that she was unaware of the existence of this "joint" account at that time. Over the course of the next several months, Edison purportedly withdrew the funds from the account without authorization from Phleger. Edison has since been indicted and arrested for wire fraud in connection with his alleged conversion of Phleger's loan proceeds. *See* Cr 07-0074 WHA, Docket Nos. 1-3. Countrywide has since contended that Phleger has defaulted on the loans.

Phleger maintains that the loan documents are fraudulent. For instance, the loan documents purport to be signed by Phleger on September 16, 2005, in San Francisco, and to be notarized by Janie Hilario. Phleger contends that she was in Los Angeles on September 16th, and that the notary was at the time licensed only in Nevada, not California.

Third-party defendant Stewart Title served as the escrow holder for the loan transactions that Phleger asserts are invalid. Phleger avers that Stewart Title:

> paid out proceeds from those loans without Mrs. Phleger's permission, direction, authorization, or instruction and did so instead based upon the instructions of someone other than Mrs. Phleger or the lender [Countrywide]. ([Complaint] at ¶¶ 9, 18.) Stewart [T]itle paid out those proceeds even thought the notary for the deeds of trust may have notarized the documents in California where she was not a licensed notary. (*Id*. at ¶ 9) Furthermore, in violation of its own policies, Stewart Title did not contact Mrs. Phleger at the end of the 3-day rescission period to inform her of rescission rights concerning the loans. (*Id*. at ¶ 10.) Stewart [T]itle also failed to adequately supervise the loan signing procedures and it attempted to orchestrate the removal of Mrs. Phleger's Green Street Home from a trust in order to push through the loans at issue. (*Id*.)

Docket No. 141, at 5.

**2. Procedural History**

On February 14, 2006, Phleger filed a complaint against Edison and his company, Private Wealth Management, in San Francisco Superior Court. On August 16, 2006, Phleger filed suit against

2

Countrywide, First National, and Hannah, also in San Francisco Superior Court. Phleger contends that First National and Hannah must indemnify her for any amount she may be found to owe Countrywide.

On March 8, 2007, Phleger filed a second amended complaint, which included a federal Truth in Lending Act claim against Countrywide. This action was thereafter removed to this Court based on this federal claim. *See* Docket No. 1.

On March 30, 2007, First National and Hannah filed a third-party complaint against Edison for equitable indemnity. *See* Docket No. 10. On June 18, 2007, Countrywide filed a counter-complaint and cross-complaint against Phleger for (1) judicial foreclosure; (2) money owed on notes; (3) breach of contract; (4) unjust enrichment; (5) equitable subrogation; and (6) declaratory relief. Countrywide asserts that Phleger owes it approximately $3.85 million for home loans. *See* Docket No. 80. Countrywide's counter and cross-complaint also includes a cross-claim against Edison for equitable indemnification.

On July 26, 2007, Phleger filed a third-party complaint against Stewart Title, asserting claims based upon equitable indemnity, negligence, and breach of fiduciary duty. *See* Docket No. 87. It is the sufficiency of these claims that are presently at issue.

**LEGAL STANDARDS**

Stewart Title seeks to dismiss Phlegher's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) provides that a pleading may be challenged and dismissed for failing to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The minimum pleading requirement is set by Rule 8(a), requiring a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *see also Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (per curiam). While a complaint "does not need detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

3

When considering a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint is liberally construed and all well-pleaded facts are taken as true. *Syverson v. IBM Corp.*, 472 F.3d 1072, 1075 (9th Cir. 2007). However, conclusory allegations of law, unwarranted deductions of fact, or unreasonable inferences are insufficient to defeat a motion to dismiss. *See Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 n.5 (9th Cir. 2005); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Courts generally do not look outside the pleadings, including any attachments thereto, in deciding a motion to dismiss. *See United States v. LSL Biotechs.*, 379 F.3d 672, 699 (9th Cir. 2004). A document is not considered outside the complaint if it is "incorporated by reference," *i.e.*, the complaint specifically refers to the document and if its authenticity is not questioned. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Cooper v. Pickett*, 137 F.3d 616, 622-23 (9th Cir. 1997). If dismissal of the complaint is warranted, it is generally without prejudice, unless it is clear that the complaint can not be saved by any amendment. *See Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 1335 (2006); *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

**ANALYSIS**

Phleger contends that if Countrywide prevails on its counter-claims against her, she would then have a claim for equitable indemnity against Stewart Title. In addition, Phleger contends that Stewart Title "owed to Jean Phleger a duty of care which includes, without limitation, the following: (1) the duty to obtain loan disbursal instructions from Jean Phleger, (2) the duty to follow only the signed disbursal instruction of Jean Phleger, (3) the duty to pay the loan funds to Jean Phleger, and (4) the duty to act in Mrs. Phleger's best interest when providing loan-related advice." Docket No. 87, ¶ 17. Phleger alleges that Stewart Title breached its duty by following escrow instructions from a person other than herself and that she therefore has claims for relief premised upon theories of negligence and breach of fiduciary duty.

Phleger's three causes of action are based upon the same set of factual allegations. Likewise, Stewart Title's arguments that Phleger has failed to state a claim are applicable to all three claims.

4

Accordingly, whether Phleger has sufficiently stated claims for equitable indemnity, negligence, and breach of fiduciary duty may be analyzed jointly.

### 3. Stewart Title's Contentions

#### a. Limited Duty of Escrow Agents

Stewart Title maintains that under California law, an escrow agent's duties are limited to the strict and faithful performance of the escrow instructions and that no liability attaches to the escrow holder for failing to do something not required by the terms of the escrow instructions or for any loss incurred while obediently following the escrow instructions. An escrow holder is an agent and fiduciary of the parties to the escrow. *Summit Fin. Holdings, Ltd. v. Continental Lawyers Title Co.*, 27 Cal. 4th 705, 711 (2002). Absent clear evidence of fraud, an escrow holder's fiduciary duty is limited to complying strictly with the instructions of the parties to the escrow. *See id.* An escrow holder has no general duty to police the affairs of its depositors. *Id.*

If an escrow holder disburses the property of the principals in violation of the escrow instructions, on the other hand, she is liable to the injured parties for breach of contract. *See Kirk Corp. v. First Am. Title Co.*, 220 Cal. App. 3d 785, 806 (1990); *Hannon v. Western Title Ins. Co.*, 211 Cal. App. 3d 1122, 1127-28 (1989). Similarly, it is the duty of the escrow holder to exercise ordinary skill and diligence in her employment and if she acts negligently, she is liable for any loss proximately occasioned by such negligence. *Kirk*, 220 Cal. App. 3d at 806; *Hannon*, 211 Cal. App. 3d at 1127-28.

Stewart Title points out that Phleger's complaint never actually alleges that it failed to follow the escrow instructions. Thus, its position is that Phleger has not stated a cognizable claim. Its limited duty under the law was to follow the instructions of the escrow agreement and Phlegher makes no claim that it failed to do so.

Rather, as Stewart Title puts it: "In this case, Mrs. Phleger's third-party complaint conspicuously avoids alleging that Stewart failed to follow the instructions of any party. Rather, the third party complaint is notably artful in this regard, carefully alleging that Stewart adhered 'to the instructions of persons or entities other than Jean Phleger and the lender in distributing loan proceeds.'" Docket No.

1  97, at 9.

Phleger's complaint and her opposition do appear to studiously play upon an equivocation between what might be referred to as the "actual Phleger" who claims that she did not sign the loans and the "purported Phleger" who did. The "purported Phleger" is presumably Michael Edison who falsified Phleger's signature or obtained her signature surreptitiously. Given the other allegations of Phleger's third-party complaint, as well as her other complaints and filings before this Court, this inference is both reasonable and obvious. Nevertheless, Phleger is very careful in her third-party complaint against Stewart Title to never specify it was Edison (or any other particular person) who provided the unauthorized signature or the instructions on carrying out the terms of the escrow agreement. Instead, Phleger repeatedly and vaguely refers to "a person other than herself."

This is somewhat confusing, but this confusion is carefully crafted. By utilizing this strategy, the plaintiff is able to make the claim that the two parties to the escrow are herself and Countrywide, and thus Stewart Title had an obligation to follow only the instructions of Phleger and Countrywide. Phleger appears to be alleging Stewart Title followed the escrow instructions of the "purported Phleger" and Countrywide, the two signatories of the loan documents, but did not follow the instructions of the "actual Phleger." Thus, we have the situation where Stewart Title followed the instructions of the escrow agreement and Phleger never alleges otherwise. Nonetheless, the plaintiff is alleging that Stewart Title owed a duty to the "actual Phleger," which it breached by following the escrow instructions of the "purported Phleger." And by relying upon this equivocation, Phleger is able to state that Stewart Title failed to follow the instructions of the parties to the escrow agreement without ever straightforwardly stating that Stewart Title failed to follow any of the escrow instructions. This circumvents the legal limitation of an escrow agent's duty to simply follow the instructions of the escrow agreement.

Of course, a plaintiff is free to state a claim in the alternative. *See* FED. R. CIV. P. 8(e)(2) ("[a] party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses . . . A party may also state as many separate claims or defenses as the party has regardless of consistency"). The difficulty here is not that Phleger

is asserting an alternative theory, but that within the alternative claim she is asserting internally inconsistent facts and exploiting the confusion between the "purported" or "signatory Phleger," and the "actual Phleger."

In her briefing papers Phleger does address this point. She maintains that her "Third-Party Complaint alleges that Stewart Title followed the instructions of a nonparty – not someone purporting to be a party," and that her "Third-Party Complaint does not allege that someone purporting to be her signed instructions regarding loan disbursement." Docket No. 141, at 14. This appears more artful than accurate.

Nevertheless, Phleger's counsel makes this representation to the Court pursuant to Federal Rule of Civil Procedure 11(b)(3). This Rule requires that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable for further investigation or discovery." Thus, the Court will presume that the contention that the "other person" is not just someone purporting to be Jean Phleger is made in good faith and consistent with the strictures of Rule 11.

Based upon the representation that "Stewart Title followed the instructions of a nonparty," not merely someone purporting to be a party, Phleger's complaint does allege that Stewart Title violated its limited duty to strictly comply with the instructions of the parties in executing the terms of the escrow agreement. California law does allow for liability when escrow agents fail to follow the instructions of the parties to the escrow. Phleger has therefore stated a claim for equitable indemnification, negligence, and breach of fiduciary duty.

**b.  Notary Public**

Stewart Title also maintains that it was justified in relying on the signatures on the loan documents because they were notarized. It argues that to the extent there is a dispute about the identity of Phlegher, it was legally justified in relying upon the notary. Pursuant to California Evidence Code section 1451:

> A certificate of the acknowledgment of a writing other than a will, or a certificate of the proof of such a writing, is prima facie evidence of the facts recited in the certificate and the genuineness of the signature of each person by whom the writing purports to have

7

been signed if the certificate meets the requirements of Article 3 . . . .

*See also Bernd v. Eu*, 100 Cal. App. 3d 511, 517 (1979) ("the primary purposes of a certificate of acknowledgment are to provide prima facie evidence of the truth of the facts recited in the certificate and to establish the genuineness of the signatures attached to an instrument"); *Ryan v. Bank of Italy Nat. Trust & Sav. Ass'n*, 106 Cal. App. 690, 693 (1930) ("[t]he purpose of the certificate of acknowledgment is to establish the identity of such person and the genuineness of the signature attached to the instrument, and the certificate is *prima facie* evidence of the truth of the facts stated therein") (internal citations omitted). And section 602 of the California Evidence Code adds that "A statute providing that a fact or group of facts is prima facie evidence of another fact establishes a rebuttable presumption."

Of course, a presumption is just that. Phleger may have the burden of eventually providing facts and evidence to defeat the presumption that the signatures on the documents were valid. But for present purposes, the allegations of Phleger's complaint are taken as true. And she has alleged that the signature on the loan documents are not genuine or were not authorized.

Moreover, Phleger is alleging that the person who notarized the loan documents does not enjoy the status of a "notary." Phleger's allegation is that the notarization was conducted by a person not licensed as a notary in California. Thus, even the presumption of the genuineness of Phleger's signature may not apply.

      **c.**     **Truth in Lending Act Obligations**

Stewart Title next argues that it had no duty to make any disclosure or communicate with Phleger concerning her rescission rights under the Truth in Lending Act (TILA). Stewart Title points out that TILA places all disclosure obligations on the lender, which in this case was Countrywide, not Stewart Title. Title 15 U.S.C. § 1631(a) provides that "Subject to subsection (b) of this section, a creditor or lessor shall disclose to the person who is obligated on a consumer lease or a consumer credit transaction the information required under this subchapter." One of the required disclosures in a consumer credit transaction in which a security interest in a consumer's principal dwelling is retained is that the consumer "shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission

8

forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later . . . ." 15 U.S.C. § 1635(a).

An escrow agent is not the same as a creditor for purposes of TILA. *See* 15 U.S.C. § 1602(f) (defining "creditor"); *see also Rede v. Great Am. First Sav. Bank*, 106 F.3d 408 (9th Cir. 1997) (unpublished) (finding that an escrow agent was not a creditor under TILA). As there is no allegation that Stewart Title is a creditor or lessor within the meaning of TILA, Phleger does not state a claim against the defendant for failing to provide the required three-day rescission notice. To the extent that Phleger is premising any of her claims on violation of TILA, that portion of the claim must be dismissed.

At the motion hearing, however, Phleger has clarified that her right to a rescission notice is not based upon a statute, it is based upon the language of the escrow agreement. Independent of TILA, Phleger alleges that the escrow agreement itself grants a right to such notice. Accordingly, she has stated claims based upon the allegation that the rescission notice of the escrow agreement was not complied with.

### d.     Removal of the Green Street Home from the Trust

Finally, Stewart Title contends there simply is no allegation in the complaint that its purported participation in the removal of the Green Street home from the trust violated any escrow instructions. As noted above, an escrow agent's duty is limited to following the instructions of the escrow agreement. Absent an allegation that the escrow agent did not follow the instruction of the escrow agreement, there would normally be no cause of action.

Once again, however, we are presented with Phleger's allegation that Stewart Title followed instructions of someone other than her in carrying out its duties as an escrow agent. Assuming that there is a good faith basis to the plaintiff's claim that "Stewart Title followed the instructions of a nonparty – not someone purporting to be a party," then Phleger has alleged that Stewart Title did not lawfully discharge its duties as an escrow agent. Taking this as true for purposes of this motion, an escrow agent may be held liable for any loss proximately caused by such a breach of duty. Phleger has therefore stated a cognizable claim for relief.

**CONCLUSION**

Accordingly, Stewart Title's motion to strike plaintiff Jean Phleger's third party complaint [Docket No. 97] is DENIED, with the exception of any claim that is based upon a violation of the Truth in Lending Act.

IT IS SO ORDERED.

December 24, 2007

*Saundra B Armstrong*
Saundra Brown Armstrong
United States District Judge